IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:<br>EDGE PENNSYLVANIA, LLC DBA<br>EDGE PENNSYLVANIA FKA<br>BLACKACRE PROPERTIES, LLC<br><br>Debtor(s) | Chapter:<br>Case Number: | 7<br>1:15-bk-04869-RNO |
| FRANKLIN COUNTY AREA<br>DEVELOPMENT CORPORATION<br><br>Plaintiff(s)<br><br>v.<br><br>EDGE PENNSYLVANIA, LLC and<br>BRANCH BANKING AND TRUST<br>COMPANY<br><br>Defendant(s) | Adversary Number:<br><br><br><br><br><br>Document No.:<br>Nature of<br>Proceeding: | 1-17-ap-00047-RNO<br><br><br><br><br><br>13<br>Motion for Summary<br>Judgment |

# **OPINION**[1]

Plaintiff, Franklin County Area Development Corporation ("FCADC"), filed a two count Complaint against the Debtor, Edge Pennsylvania, LLC ("Debtor") and BB&T Bank ("BB&T") seeking declaration of a landlord's lien on equipment superior to BB&T's security interest, or in the alternative, a declaration of rent due from BB&T. BB&T moved for summary judgment and the Debtor joined in the Motion. For the reasons stated below, I will deny the summary judgment motion.

**I.    Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

---

[1]    Drafted with the assistance of Maria Babajanian, Esq., Law Clerk.

1

## II. Facts and Procedural History

A voluntary petition under Chapter 11 of the Bankruptcy code was filed by the Debtor on November 12, 2015. The case was converted to a case under Chapter 7 on November 9, 2017. FCADC originally filed this action in the Court of Common Pleas for the 39th Judicial District of Pennsylvania, Franklin County, on October 17, 2016. Exhibit 1, Mar. 30, 2017, ECF No. 1-4. BB&T filed a Notice of Removal to the United States District Court for the Middle District of Pennsylvania on November 2, 2016. Notice of Removal, Mar. 30, 2017, ECF No. 1-2. Among other filings, an Answer, Amended Complaint, and Answer to the Amended Complaint were filed in the District Court before the action was transferred to this Court on Mar. 30, 2017. That transfer commenced this adversary proceeding. Civil Docket for Case#:1:16-cv-02216-JEJ, Mar. 30, 2017, ECF No. 1-1.

The Complaint alleges that FCADC was the owner of an industrial building at 1711 Opportunity Avenue, Chambersburg, PA ("1711 property"), and leased its premises to the Debtor on September 1, 2012. Am. Compl. ¶¶ 7-8, Mar. 30, 2017, ECF No. 1-8. On April 10, 2013, BB&T, through its predecessor Susquehanna Bank, allegedly agreed to provide the Debtor with financing secured by liens on the Debtor's equipment. Am. Compl. ¶ 10, ECF No. 1-8. BB&T entered into an agreement with FCADC titled Landlord's Waiver and Subordination ("Subordination Agreement") which limited FCADC's rights in the equipment located at the 1711 property. Am. Compl. ¶ 11, ECF No. 1-8.

Subsequent to filing for bankruptcy, the Debtor defaulted on rent and utility payments and, on April 21, 2016, FCADC was granted relief from the automatic stay for the 1711 property. Am. Compl. ¶¶ 15-16, ECF No. 1-8. FCADC states that it confessed judgment under the lease and took possession of the 1711 property on May 9, 2016. Am. Compl. ¶¶ 17-18, ECF No. 1-8. The Debtor also defaulted under a stipulation with BB&T regarding the use of cash

2

collateral, therefore the Court granted BB&T relief from the automatic stay as to the equipment on September 13, 2016. Order 1, Sept. 13, 2016, 1:15-bk-04869-RNO ECF No. 352. On November 9, 2016, the Court approved a Motion for Sale free and clear of liens as to the equipment located at the 1711 property for $318,750, with the sale proceeds to be escrowed until further Order of the Court. Order Approving Sale of Debtor's Personal Property, Vehicles and Intellectual Property, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests ("Order Approving Sale") ¶ 13, Nov. 9, 2016, 1:15-bk-04869-RNO ECF No. 414. FCADC alleges that it is owed $269,850.94 from May 1, 2015 to May 1, 2016, and an additional $290,721.36 from May 1, 2016 to October 31, 2016. Am. Compl. ¶¶ 24-25, ECF No. 1-8.

FCADC argues that subordination of its rights in the equipment was conditioned upon BB&T's removal of the equipment within thirty days of lease termination. Am. Compl. ¶ 32, ECF No. 1-8. Due to BB&T's alleged failure to timely remove the equipment, FCADC requests a declaration that: (1) it has a lien on the equipment in the amount of one year's rent; (2) such lien is superior to BB&T's security interest; and (3) satisfaction of its lien will be paid out of the escrowed proceeds of the sale of the equipment. Am. Compl. 8-9, ECF No. 1-8. FCADC also alleges that BB&T agreed to make monthly rent payments while it was in possession of the 1711 property after the lease was terminated. Am. Compl. ¶ 35, ECF No. 1-8. FCADC therefore requests, in the alternative, a declaration that BB&T owes FCADC for rent due under the lease to date as well as rent accruing until the equipment is removed. Am. Compl. 10, ECF No. 1-8. The underlying Chapter 7 bankruptcy case was originally assigned to Judge Mary D. France. In light of her impending retirement, the case was reassigned to me on February 26, 2017.

BB&T filed a Motion for Summary Judgment on June 28, 2017, and the Debtor joined in the Motion on July 5, 2017. Briefs have been filed in support of, and in opposition to, the Motion. It is now ripe for decision.

### III. Discussion

#### A. Standard to Decide a Motion for Summary Judgment Under F.R.B.P. 7056

Federal Rule of Civil Procedure 56 is made applicable in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 2578 (2006); *Celotex Corp. v. Catrett*, 447 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993); *In re Eury*, 544 B.R. 563, 565 (Bankr. W.D.Pa. 2016). A material fact is one which affects the outcome of the suit under substantive law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011). The burden of proof is initially on the movant to demonstrate that there is no genuine dispute of material fact based on "depositions, documents, affidavits, stipulations, admissions, and interrogatory answers." *In re Scalera*, 2013 WL 5963554, at *1 (Bankr. W.D.Pa. 2013). The court must view the facts in the light most favorable to the non-moving party and draw all inferences in favor of that party. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001); *In re Eury*, 544 B.R. 563, 566 (Bankr. W.D.Pa. 2016).

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of facts that are not subject to reasonable dispute when they are generally known or capable of being accurately and readily determined by sources whose accuracy cannot reasonably be questioned. *In re LandSource Communities Dev. LLC*, 485 B.R. 310, 315-16 (Bankr. D.Del. 2013) (citing *In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995)). Judicially noticed items may include

4

the docket, claims register, and documents from the bankruptcy case. *Id.* I take judicial notice of the documents filed in the Debtor's bankruptcy case and in this Adversary Proceeding.

B. **Count I – Declaration of a Landlord's Lien Superior to BB&T's Interest**

The Subordination Agreement states that Pennsylvania state law shall govern the interpretation and enforcement of its provisions. Am. Compl. ¶ 31, ECF No. 1-8. I will first address whether a landlord's lien exists and then whether such lien has priority over BB&T's secured claim in light of the Subordination Agreement.

i. **Existence of a Landlord's Lien**

Under 68 P.S. § 321, goods and chattels that are "liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution . . . [but] shall not exceed one year's rent." The Western District of Pennsylvania stated in *In re Uni-Lab, Inc.*, that under Pennsylvania common law, "the lien of the landlord arises when a levy has been made under distraint proceedings," but that the "mere right to distraint is not sufficient nor equivalent to a lien obtained by distraint." 180 F.Supp. 176, 179 (W.D. Pa. 1959), *aff'd*, 282 F.2d 123 (3d Cir. 1960) (citing *Shalet v. Klauder*, 34 F.2d 594, 595 (3d Cir. 1929) ("In Pennsylvania, a lien is not given by statute. In order that the right may ripen into a lien, distraint must be made."); *Hay v. Patrick*, 79 F.2d 407, 407 (3d Cir. 1935) ("It is undisputed that in the instant case the [landlord] did not distraint upon the reclaimed property. We conclude that the appellant did not have a lien . . .")). The relevant question is therefore whether FCADC took action to distrain upon the equipment.

FCADC argues that under 68 P.S. § 321, it has a lien against the equipment for up to 12 months' rent under the lease. Am. Compl. ¶ 28, ECF No. 1-8. The total rent owed by the Debtor to FCADC is allegedly in excess of $540,000. Am. Compl. ¶ 27, ECF No. 1-8. On October 6,

5

2016, the Court granted FCADC's Motion to Compel removal of the equipment, stating that FCADC and BB&T may exercise their respective state law remedies with respect to the personal property. Order 1, Oct. 6, 2016, 1:15-bk-04869-RNO ECF No. 379. FCADC states that it was at this time that it immediately exercised its rights to distraint "and as it had exclusive possession of the 1711 Equipment, it then immediately filed a complaint in state court asserting all of its rights in the 1711 Equipment." Br. of Franklin County Area Development Corporation Opposing Branch Banking and Trust's Mot. for Summ. J. ("FCADC Brief") 3, Oct. 10, 2017, ECF No. 30. BB&T disagrees, stating that FCADC's attempt to have a landlord's lien declared is "contrary to the express written terms of the Subordination," and that "FCADC never took any action to distrain against the 1711 Equipment prior to Edge's Bankruptcy and therefore never obtained a landlord's lien in the 1711 Equipment." Br. in Support of Branch Banking and Trust Company's Mot. for Summ. J. ("BB&T's Brief") 2, June 28, 2017, ECF No. 13-3. I find there is a dispute of material fact regarding whether FCADC exercised its right to distraint, which is required to create a landlord's lien.

### ii. Priority and Waiver of Right to Distraint

Assuming, arguendo, that a landlord's lien exists, FCADC also seeks a determination that its lien is superior to BB&T's security interest in the equipment. Generally, a landlord must distrain for rent prior to the filing of the bankruptcy petition in order to have priority over secured claims in bankruptcy. *In re George Townsend Co.*, 180 F.Supp. 625, 627 (E.D.Pa. 1957) (citing *In re Quaker City Uniform Co.*, 238 F.2d 155, 157 (3d Cir. 1956) ("The holding . . . that the lien of a chattel mortgagee, inferior under state law to the landlord's lien, should by necessary implication be postponed . . . to a position behind the subordinated lien of a landlord who has distrained, is not applicable here, because there is no 'lien * * * of distress for rent.'")).

6

In *In re George Townsend Co.*, the Eastern District of Pennsylvania found that because a landlord had not distrained for rent before a debtor filed for bankruptcy, the claim was unsecured and would be paid after the chattel mortgagee's claim. *Id.* at 627-28. The Court further explained:

> The filing of a bankruptcy petition is equivalent to the issuance of an execution against the tenant, and once such an execution has been made. The Pennsylvania law (68 P.S. § 321)* then substitutes for the landlord's right to distrain a preference out of the fund derived by the sale of those goods on which he might have distrained.

*Id.* at 627 n.4. However, here relief from stay has been granted as to the equipment and, pursuant to this Court's Order granting FCADC's Motion to Compel removal of the equipment, the parties may exercise their respective state law remedies. Order 1, Oct. 6, 2016, 1:15-bk-04869-RNO ECF No. 379. Further, the parties have entered into a Subordination Agreement that, if enforceable, would control. The relevant provisions of the Subordination Agreement are as follows:

> NOW, THEREFORE, intending to be legally bound hereby, and in consideration of the mutual promises and undertakings set forth herein, the parties agree as follows:
>
> 1. That any and all liens, claims, demands, or rights, including but not limited to the right to levy or distrain for unpaid rent, which Landlord now has or hereafter acquires on or in any of Tenant's personal property upon which Lender obtains a lien or security interest shall be subordinate and inferior to the liens or security interest of Lender and as to Lender, Landlord hereby specifically waives all rights of levy, distraint or execution with respect to this property.
>
> . . .
>
> 4. That Landlord will use its best efforts to give at least thirty (30) days prior written notice to Lender of the termination of Tenant's lease and will allow Lender a reasonable time in which to remove any of Tenant's property upon which Lender has a lien or in which Lender has a security interest, provided, however, that in no event shall Lender have the right to leave said property on the premises for a period in excess of thirty (30) days after the termination date of Tenant's lease. Lender shall pay to Landlord, on a weekly basis in advance (pro

7

> rata, depending on the number of days Bank is in possession), the current monthly rent accruing under the Lease during any period while Bank is in possession of the leased premises after the Lease termination date.

Am. Compl. 31, ECF No. 1-8. The Subordination Agreement also states that BB&T will enter into the loan agreement with the Debtor "only if Landlord subordinates and waives as to Lender any claims, demands or rights the undersigned may have or acquire with respect to said property." Am. Compl. 31, ECF No. 1-8.

Courts have recognized waivers of rights to distraint executed by landlords. *Matter of B & G Fabricating Co., Inc.*, 33 B.R. 167, 169 (Bankr. W.D.Pa. 1983) ("the Landlord signed various Landlord Release and Waiver Forms on behalf of the above-mentioned secured creditors, wherein it purportedly waived its right to distrain their collateral in the event of Debtor's default in its rental obligation."). In *Brunswick Corp. v. Ciaffoni*, the Court summarized a decision by the United States District Court for the Western District of Pennsylvania, finding that "appellees were creditor beneficiaries of the rider provision in which appellants agreed with [the lessee] to sign a landlord's waiver in favor of appellees . . . [and therefore the lessor] had waived his right to distrain as a land-lord." 248 A.2d 39, 40 (Pa.1968).

FCADC argues that "[a]ny waiver or subordination was conditional on BB&T removing the property in which it had a security interest or lien within thirty days of the Lease termination." Am. Compl. ¶ 32, ECF 1-8. Because BB&T allegedly failed to remove the equipment within 30 days of the lease termination, FCADC argues that its landlord's lien is not subordinate to BB&T's security interest. In its Answer to the Amended Complaint, BB&T takes the position that the waiver was not conditional but that "Plaintiff forever relinquished any claims for rent against the collateral of [BB&T]." Answer and Affirmative Defenses of Branch Banking and Trust Company to Plaintiff's Am. Compl. ("BB&T Answer") ¶ 11, Mar. 30, 2016,

8

ECF No. 1-14. FCADC argues that removal of the property by BB&T was a condition precedent to any subordination of rights to the equipment. BB&T argues that the Subordination Agreement "contains an express, unambiguous, and unequivocal waiver of FCADC's right to levy or distraint." BB&T's Brief 4, ECF No. 13-3.

A condition precedent is one that must occur before a duty to perform arises. *Beaver Dam Outdoors Club v. Hazelton City Authority*, 944 A.2d 97, 103 (Pa. Commw. Ct. 2008) (citing *Acme Mkts., Inc. v. Fed. Armored Express, Inc.*, 437 Pa. Super. 41, 44 (Pa. Super. Ct.1994)). No particular words are required to create a condition precedent, however "an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention." *Id.* The following general rules of contract interpretation apply to determine the purpose of a condition:

> When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding. *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360 (1992) (en banc ). The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Trumpp v. Trumpp*, 351 Pa.Super. 205, 505 A.2d 601 (1985). When the terms of a written contract are clear, this Court will not re-write it to give it a construction in conflict with the accepted and plain meaning of the language used. *Litwack v. Litwack*, 289 Pa.Super. 405, 433 A.2d 514 (1981). Conversely, when the language is ambiguous and the intention of the parties cannot be reasonably ascertained from the language of the writing alone, the parol evidence rule does not apply to the admission of oral testimony to show both the intent of the parties and the circumstances attending the execution of the contract. *Dewitt v. Kaiser*, 335 Pa.Super. 258, 484 A.2d 121 (1984).

*Creeks v. Creeks*, 619 A.2d 754, 756 (Pa. Super. Ct.1993).

FCADC argues that the Subordination Agreement is ambiguous as to the consequences of failing to remove the equipment within 30 days and oral testimony is therefore relevant to determine intent. FCADC Brief 2, ECF No. 30. While courts must decide whether contract terms are clear or ambiguous, "it is for the fact[]finder to resolve ambiguities and find the parties'

9

intent," and a contract is ambiguous if "it is reasonably susceptible of different constructions." *Windows v. Erie Insurance Exchange*, 161 A.3d 953, 957 (Pa. Super. Ct. 2017); *see also In re D'Angelo*, 505 B.R. 181, 189 (Bankr. M.D.Pa. 2014) ("A contract is ambiguous under Pennsylvania law 'if and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning.'") (citing *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.,* 297 F.3d 294, 300 (3d Cir. 2002)). Further, ambiguous provisions are generally construed against the party drafting the agreement. *Windows v. Erie Insurance Exchange*, 161 at 957. FCADC alleges that the Subordination Agreement was drafted by counsel for BB&T. Am. Compl. ¶ 11, ECF No. 1-8.

Viewing the facts in a light most favorable to FCADC, I cannot find that BB&T is entitled to judgment as a matter of law due to ambiguity as to the effect of the provision requiring removal of the equipment. If timely removal of the equipment by BB&T is determined to be a condition precedent, then it would affect any subordination of the alleged landlord's lien. The Motion for Summary Judgment is therefore denied as to Count I of the Amended Complaint.

### C. Count II – Declaration of Rent Due from BB&T

FCADC requests, in the alternative, a declaration that BB&T must pay for rent and interest accruing up until the time the equipment is removed and for the costs of suit. Am. Compl. 10, ECF No. 1-8. BB&T allegedly failed to pay for rent while in possession of the 1711 property, contrary to the Subordination Agreement. Am. Compl. ¶ 38, ECF No. 1-8.

BB&T argues that the contents of the 1711 property were sold and removed pursuant to a Court Order and that it never exercised physical custody or control over real property, or the equipment located there, after termination of the lease. Statement of Undisputed Material Facts

10

Supporting Branch Banking and Trust Company's Mot. for Summ. J. ¶¶ 40-41, June 28, 2017, ECF No. 13-1. BB&T points out that the Amended Complaint never alleges possession of the 1711 property by BB&T, but rather that FCADC took possession after lease termination. BB&T's Brief 3, ECF No. 13-3. It is also worth noting that counsel for FCADC stated, in a letter addressed to the vice president of BB&T on May 9, 2016, that "[t]oday, FCADC took possession and effectively terminated the tenant's rights in the lease under state law." Am. Compl. 36, ECF No. 1-8. Indeed, as BB&T alleges, FCADC also states in paragraph 18 of its Amended Complaint that it took possession of the 1711 property at that time.

FCADC argues that "BB&T's position, namely that it did not take physical possession after lease termination, is not addressed in the Subordination Agreement." FCADC Brief 2, Oct. 10, 2017, ECF No. 30. FCADC states that possession of the property is defined as "leaving the collateral on the premises," and that the "right to remove, coupled with an absolute obligation to remove, is equivalent to occupancy or possession." FCADC Brief 5, ECF No. 30. Because BB&T drafted a Subordination Agreement that does not provide a consequence for failing to remove the equipment, FCADC argues that there is a nullification of the Subordination Agreement or, at a minimum, a requirement by BB&T to pay rent. FCADC Brief 5, ECF No. 30.

The Pennsylvania Landlord and Tenant Act ("Act") does not state whether failure by a tenant, or a lender, to remove property from leased premises constitutes possession. Moreover, possession is not a defined term under the Act. 68 P.S. § 250.511 provides that a landlord may recover possession of real property by an action of ejectment or a confession judgment in accordance with a written agreement. Under 68 P.S. § 250.505a, a tenant shall remove personal property from the premises upon termination of a lease, and any abandoned property remaining may be disposed of by the landlord. Property is deemed abandoned, among other circumstances,

11

when the tenant has vacated the premises following termination of a lease, however "in the event of a conflict between the provisions of this section and the terms of a written lease, the terms of the lease shall control." 68 P.S. § 250.505a(b)(1), (g).

It is noteworthy that the Act states a landlord is in possession of the premises once ejectment or confession of judgment occurs, without conditioning possession on the removal of personal property. Personal property is instead addressed separately in the context of disposal of abandoned property. It therefore appears that the failure to remove personal property does not have any bearing on the landlord's possession of the property. It is then relevant to look to the Subordination Agreement to see if these general provisions are changed by contract. The Subordination Agreement states that FCADC would use its bests efforts to give BB&T notice of the termination of the lease and allow "a reasonable time" for the removal of the property, but that "in no event shall [BB&T] have the right to leave said property on the premises for a period in excess of thirty (30) days after the termination date. . . ." Am. Compl. 31, ECF No. 1-8. Further, the Subordination Agreement provides that rent would be paid to FCADC while BB&T "is in possession of the leased premises after the Lease termination date." Am. Compl. 31, ECF No. 1-8. A definition for possession is not provided in the Subordination Agreement.

Without further statutory guidance, the Superior Court of Pennsylvania has looked to dictionary definitions to interpret the meaning of "possession" in a lease, finding that possession means physical control:

> In this case, the parties agree that responsibility for payment of taxes under their agreement is governed by Article 3 of the lease
>
> …
>
> Section 302. Taxes and Assessments
> TENANT shall pay as additional rent, as they become due and
> payable [,] ... all taxes, charges, claims, assessments, water and

> sewer rents, and other charges which may be assessed or levied by any public authority against the premises, or arising by reason of the *occupancy, use or possession* of the premises. All of the foregoing are hereinafter collectively referred to as "taxes".
>
> …
>
> Taxes "arising by reason of the occupancy, use or possession of the premises" (but not assessed "against the premises"), also described by section 302, are likewise attributable as a reasonable business expense because they bear a direct nexus to the real property. This interpretation is compelled by the *plain meanings* of "occupancy" and "possession," both of which *denote actual physical control* of the geographic space of the leasehold. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1560 (1976) (defining "occupancy" as "1 a: the taking and holding possession of real property under a lease or tenancy at will"). *See also id.* at 1770 (defining "possession" as "1 b: actual physical control or occupancy of property by one who holds for himself and not as a servant of another without regard to his ownership and who has legal rights to assert interests in the property against all others having no better right than himself"). Clearly, taxes arising from the tenant's "actual physical control" of the real property as one who asserts legal rights in it reasonably might be contemplated by the parties as an expense of the tenant's commercial enterprise, to be borne by the tenant. Consequently, we interpret the parties' lease to require the tenant to pay such taxes, and only such taxes, as are levied or assessed against the real property or arise from the tenant's actual physical control of the real property.

*Charles D. Stein Revocable Tr. v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980-81 (Pa. Super. Ct. 2000) (emphasis added); *see also In re Hart*, 530 B.R. 293, 306 (Bankr. E.D.Pa. 2015) ("Furthermore, under Pennsylvania law, possession has been defined as actual physical control or occupancy of property by own who holds for himself."). However, it is possible that possession could alternatively be defined as "having control over a thing with the intent to have and exercise such control. *In re Bradstreet*, 2002 Wl 1349588, at *13 (Bankr. E.D.Pa. 2002) (citing BLACK'S LAW DICTIONARY 1163 (6th ed.1990) and stating that "[t]his concept appears to be recognized under Pennsylvania law). This second definition appears more in line with FCADC's argument that possession means a right to remove coupled with an absolute obligation.

13

As with Count I, Count II of the Amended Complaint is ultimately a question of the parties' intent when drafting the Subordination Agreement. FCADC's contention that possession is defined as a right to remove coupled with an absolute obligation is not clearly contradicted by a plain reading of the Subordination Agreement, which fails to define the term "possession." Am. Compl. 31, ECF No. 1-8. BB&T was the alleged drafter of the Subordination Agreement and therefore any ambiguity would be interpreted in FCADC's favor.

When a contract is clear and unequivocal, its meaning must be determined by its contents alone and the Court may not consider additional evidence. *Hartline v. Public School Employees' Retirement Bd.*, 2015 WL 5123911, at *6 (Pa. Commw. Ct. Jan. 28, 2015). Additionally, a contract is not ambiguous merely because the parties disagree on its construction. *Id.* However, I find here that conducting an in-depth analysis regarding the definition of "possession" in the context of the equipment without outside evidence would fall outside the standard for reviewing a summary judgment claim. *Mylan Inc. v. SmithKline Beecham Corp.,* 723 F.3d 413, 418 (3d Cir. 2013). The Third Circuit states that "[i]n a contract interpretation action, summary judgment is appropriate only where the contractual language is unambiguous," but that if the nonmoving party presents a reasonable alternative reading, "then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Id.* (citing *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3e 518, 521 (3d Cir. 1999), *Newport Assocs. Dev. Co. v. Travelers Indem. Co.*, 162 F.3d 789, 792 (3d Cir. 1988)). Additionally, regardless of which definition governs, BB&T states that it exercised neither physical custody nor control, presenting another question of fact. Therefore, viewing the facts in a light most favorable to FCADC, I must also deny the Motion for Summary Judgment as to Count II.

**IV. Conclusion**

BB&T's Motion for Summary Judgment is denied as to Count I and Count II. A trial date will be set for this matter.

By the Court,

*Robert N. Opel II* (signature)

Robert N. Opel, II, Chief Bankruptcy Judge
(BI)

December 19, 2017